H. B. CLAY *et als.* v. THE JUSTICES OF HAWKINS COUNTY *et als.*

1. BONDS. *County. Railroad subscription.* The validity of county bonds, issued for railroad subscription by the county, depends upon the *power* of the county court at the time to issue the bonds; mere irregularities will not render the bonds void.

2. SAME. *Same.* A special act of the Legislature, passed in 1851–2, authorizing Hawkins and certain other counties to issue bonds in payment of stock subscribed upon a vote of the people, was not repealed by sec. 41 of the Code.

Clay v. Justices of Hawkins Co.

3. CHANCERY COURT. *Jurisdiction. County courts. Levy of taxes.* The amount of taxes to be levied either for general or special purposes, is left to the discretion of the county court, and its action is more legislative than judicial, and the chancery court has no jurisdiction to reduce the amount of taxes, nor to supervise its action in the matter of assessment of taxes for any purpose, unless it be in cases where the county court refuses altogether to perform its duty in regard to the levy of taxes to meet its obligaions, and where the duty may be enforced by *mandamus.*

4. SAME. *Same. Same. County finances.* County courts cannot be called to account in the chancery court for its management of the county finances.

FROM HAWKINS.

Appeal from the Chancery Court at Rogersville. H. C. SMITH, Ch.

W. P. GILLENWATERS for complainants.

McDERMOTT & KYLE and McKINNEY & WATTERSON for defendants.

McFARLAND, J., delivered the opinion of the court.

This bill is filed by H. B. Clay and other citizens and tax payers of Hawkins county, against the Justices of the Peace and the holders of certain bonds of the county, issued to the Rogersville and Jefferson Railroad Company. The object of the bill is, first to have the bonds in question declared void, and the further payment of interest thereon enjoined.

The Rogersville and Jefferson Railroad Company was chartered by the Legislature of 1851–2. The county of Hawkins subscribed for stock in the amount

of $50,000, and the bill expressly concedes that the subscription was in accordance with the power given by the act of 1851–2, then in force, and in pursuance of the vote of the people upon the question, and further, *that the subscription was valid.* The date of the subscription is not precisely given, but it is to be inferred from the statements of the bill that it was in the year 1856. The bonds in question were issued in the year 1866, in payment of a balance of this subscription, to the amount of $40,000.

The grounds assumed in the bill are, that although the subscription was valid, there was *at the times the bonds were issued in* 1866, no legislative act *in force* authorizing the county court to issue the bonds in payment of the stock. It is not denied that such authority was expressly given by the act of 1851–2, recognized by the act of 1855–6, but it is assumed that before the bonds were in fact issued, the above acts were repealed by the adoption of the Code in 1858. By the 1 th section of chapter 191, of the acts of 1851–2, certain counties in Middle Tennessee were authorized to subscribe for stock in railroad companies chartered for the purpose of building roads through said counties, provided the question be first submitted to the voters of the county, and by subsequent sections, if a majority of the voters decide in favor of the subscription, it is made the *duty* of the county court to make the subscription, issue the bonds and levy and collect an annual tax to meet the interest and create a sinking fund. By the 20th sec., the preceding provisions are extended and made appli-

cable to other counties, including the county of Hawkins. And by chapter 62, section 2, of the acts of 1855–6, still further extended to certain other counties. These acts were undoubtedly in force at the time the election was held and the subscription made, and it is not denied in argument that the bonds issued in 1866 were in accordance with the power given. But the bill assumes that these acts were repealed by the adoption of the Code.

The 41st section of the Code is in these words: " All public and general acts passed prior to the present session of the General Assembly, and all public and special acts the subjects whereof are revised in this Code, except acts establishing or regulating special courts, subject to the limitations, and with the exceptions herein expressed, are hereby repealed." And in case of any conflict between the acts of this session and this Code, the latter shall be controlling. Sec. 42. " Local, special and private acts and acts of incorporation heretofore passed, are not repealed unless it be herein so expressed," etc., etc.

The general subject of county subscription to the stock of railroad companies was revised by the Code, and a different mode provided for the payment of the stock, that is to say, subscriptions were authorized payable in yearly instalments.

These provisions of the Code are taken mainly from the act of 1851–2, chapter 117, passed prior to chap. 191, before referred to. Chapter 117, as well as the Code, make general provisions applicable to all counties. Chapter 191, in the sections referred to, give

special power to the county of Hawkins and other counties, and these special acts are not revised or intended to be repealed by the Code, especially when the same had been acted upon and the subscription made before the .Code was adopted. The position, however, is taken in the bill, that the proposition submitted to the voters of Hawkins county was specifically to subscribe $50,000, payable in five annual instalments; and the county court had no power to change the terms of the contract and issue bonds in payment of the unpaid instalments. The first act of 1851–2, that is chapter 117, did provide that the notice of the proposed election should specify the amount of stock proposed to be taken and when payable, upon which the vote of "subscription" or "no subscription" was to be taken. But chapter 191, made specially applicable to Hawkins and certain other counties, did not require the terms of the subscription to be advertised, but simply that the subscription for the amount of stock proposed be assented to by the vote.

Both acts being in force, and the latter expressly authorizing the issuance of bonds in payment of the subscription, and the power having been exercised and acquiesced in by the county for several years, we hold that the bonds are not void. It is well settled that where the *power* to issue the bonds exists, they are not void, although errors and irregularities may have supervened in the exercise of that power. The change of the terms of payment has been too long acquiesced in to be now corrected, and the court having the power to issue the bonds, they are valid.

Other questions have been made as to the validity of the bonds, but they have not been pressed; in fact the learned counsel for the complainants has not seriously denied their validity. The only point relied upon, and that not confidently, was upon the supposed repeal of chapter 191 of the acts of 1851–2, by the 41st section of the Code.

But the bill has another aspect. It contains a detailed statement of the taxes assessed by the county court of said county, since the issuance of the bonds, from which it is undertaken to be shown that the levy was far in excess of the amount required; and furthermore, that the taxes so levied and collected have not been properly applied, in paying the interests due and in extinguishing the principal of the bonds. And the relief prayed for, as we understand it, is that the county court, as the agent of the county, be required to account and show what has become of the money, and that a general account of the finances of the county be taken. We see no ground upon which the cause upon this theory can be entertained.

The chancery court has no jurisdiction to supervise the action of the county court in the matter of assessment of taxes for any purpose, unless it be in these cases where the county court refuses altogether to perform its duty in regard to the levy of taxes to meet its obligations and where the duty may be enforced by *mandamus*. But the amount of taxes to be levied, either for general or special purposes, is left to the discretion of the county court, and we know of no authority in the chancery court to revise its

Clay *v.* Justices of Hawkins Co.

action and reduce the amount.   The action of the county court is more legislative than judicial in this respect, and whether there be any remedy or not, we think it clear that there is not in the chancery court.

And it is equally clear that the county court cannot be called to account in the chancery court for its management of the county finances.   If the officers of the county responsible for the collection and disbursement of the county funds are in default, the remedies against them are ample and are specially provided. But a bill in equity to compel the justices of the county composing the county court, as such to give an account of their proceedings and to submit their action to review by account in the chancery court is, we think, a proceeding unknown to our laws.

The decree of the chancellor sustaining the demurrer will be affirmed with costs.